UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Scott Giovino,

Plaintiff,

v.

Commissioner of Social Security,

Defendant.

**Decision and Order**

19-CV-122 HBS
(Consent)

## I.    INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c).  The Court

has reviewed the Certified Administrative Record in this case (Dkt. No. 5), and familiarity is

presumed.  This case comes before the Court on cross-motions for judgment on the pleadings under

Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 9, 10.)  In short, plaintiff is

challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he

was not entitled to Disability Insurance Benefits under Title II, or Supplemental Security Income

under Title XVI, of the Social Security Act.  The Court has deemed the motions submitted on

papers under Rule 78(b).

## II.    DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry.  We

must first decide whether HHS applied the correct legal principles in making the determination.  We

must then decide whether the determination is supported by substantial evidence."  *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted).  When a district

court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  Substantial evidence is defined as "'more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts.  *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994).  When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000).  In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998).  The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion.  *Id.*  "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*"  *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

2

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e).
The ALJ must then determine the individual's ability to return to past relevant work given the RFC.
*Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff challenges the Commissioner's final determination by asserting that the ALJ failed
to account for his thoracic compression fractures. The ALJ found that plaintiff had the severe
impairments of degenerative disc disease-lumbar; status-post fracture of the thoracic and lumbar
spine; diabetes mellitus with neuropathy; and alcoholic cirrhosis. (Dkt. No. 5 at 30.) After finding
that plaintiff met no medical listing, the ALJ concluded that plaintiff had the RFC for sedentary
work with some non-exertional limitations. (*Id.* at 32.) Plaintiff asserts that the ALJ's conclusion
rests on incomplete information because the consultative examiner who received some weight,
Hongbiao Liu, M.D., did not review imaging studies. "The only opinion in the record of Plaintiff's
physical capacity to do work was that of Dr. Liu, who did not have the benefit of imaging of the
Plaintiff's spine despite Plaintiff's lumbar degeneration and compression fractures being severe
impairments. The ALJ did only grant this opinion partial weight, however, he still was not at liberty
to interpret the bare medical findings to craft a residual functional capacity." (Dkt. No. 9-1 at 12; *see
also* Dkt. No. 11 at 1.) Plaintiff elaborates on how he felt that the consultative examiner was not able
to assess his history of diagnostic imaging:

> Plaintiff was found to have the severe impairments of degenerative disc
> disease of the lumbar spine and status post fracture of the thoracic and lumbar spine.
> T. 26. The only opinion regarding the Plaintiff's physical capacity to do work was
> that of Dr. Liu, who performed a consultative examination on December 23, 2014.
> He opined that the Plaintiff would have a mild-to-moderate limitation in prolonged
> walking, bending, and kneeling. However, Dr. Liu had no imaging to rely on, and
> only indicated that the Plaintiff had a history of arthritis. T. 1671-74. A May 30,
> 2015 MRI showed disc desiccation throughout the lumbar spine, with protrusions at
> T2-3, T3-4, T4-5, T5-6, T5-7, T7-8, and T8-9. There were compression fractures
> from T10 through L1, most severe at T12. T. 2007-08. A June 26, 2015 MRI study
> showed a disc deformity at T11 and T12; disc herniation at T10-11 with mild central
> stenosis and cord deformity; broad based shallow herniation at T11-12 that caused

effacement of the thecal sac and flattening of the cord; disc bulge at L3-4; central disc herniation impressing into the thecal sac at L4-5 with mild narrowing. T. 1704-06. As such, Dr. Liu lacked necessary background to determine the Plaintiff's ability to function. *Camille*, 104 F. Supp. 3d at 343-44. As such, it could not be substantial evidence for the ALJ to base a decision on. *Biro*, 335 F. Supp. 3d at 472. The ALJ granted it "some weight" for being based off of a one-time examination, although he found it "reasonably consistent" with the findings throughout the record. T. 35. However, the ALJ was not an expert who could interpret the functional limitations posed by the compression fractures. *Riddick*, 2016 WL 816795 at *10.

(Dkt. No. 9-1 at 14–15.) The Commissioner counters that, in effect, plaintiff is blurring two different issues—whether the consultative examiner properly assessed current function based on the clinical evidence immediately before him; and whether the ALJ properly accounted for imaging studies and related information in the record:

In addition to Dr. Liu's report, there is substantial evidence in the record that Plaintiff retained the ability to meet the exertional demands of sedentary work. Treatment records demonstrate that Plaintiff's gait was steady, his ambulation was appropriate and he moved all extremities independently without evidence of weakness. T420, 421, 432, 441, 442, 453, 464, 494, 499, 505, 511, 517, 966, 968, 971, 972, 974, 975, 978, 979, 981, 982, 984, 985, 987, 988, 991, 992, 1032, 1049, 1145, 1478, 1480, 1485, 1489, 1493, 1495, 1501, 1504, 1509; see also T431, 452, 454, 564, 570, 710, 716, 727, 754, 765, 788, 818, 837, 997, 1191, 1197, 1337, 1343, 1354, 1381, 1392, 1549, 1632, 1637 (normal balance, gait and station.). He had full range of motion in the back and neck. T295, 473, 1089, 1145, 1549, 1930, 1938, 1951, 1997. He had full strength in all extremities. T320, 347, 422, 433, 441, 454, 965, 1008, 1118, 1633, 1737, 1946, 2030, 2036, 2094. This all constituted substantial evidence in support of the ALJ's decision

Furthermore, Plaintiff's own self-reported activities of daily living supported the ALJ's decision. Plaintiff reported that he cooked three to four times week. T1672. He cleaned the house and did laundry two to three times week. T1672. He showered, bathed and dressed every day. T1672. He enjoyed exercise, gambling and hanging out with friends. T1668. He spent his days walking to the store and running errands. T1668. He played sports. T232.

In his brief, Plaintiff argued that the ALJ did not properly evaluate that imaging tests of Plaintiff's spine showing lumbar degeneration and compression fractures. Pl. Br. at 12. Specifically, Plaintiff argues that that the ALJ could not have evaluated these reports without guidance from a medical opinion. Pl. Br. at 15-16. This argument is meritless. The very reports that Plaintiff cites all contains impressions from doctors concluding that the findings were mild. T1705 ("mild edema", "mild compression", "mild central canal narrowing"), 1714, 1717, 1718-

1719, 1720, 1725, 1727, 1729, 1757, 1769; see also 1737 ("imaging from last year demonstrated only mild degenerative changes"). This was not a case of an ALJ trying to understand complicated technical laboratory findings, merely reading medical reports at face value.

(Dkt. No. 10-1 at 7–8.)

The Commissioner has the better argument. Dr. Liu conducted a direct, in-person clinical examination of plaintiff on December 23, 2014. (Dkt. No. 5-1 at 575.) For the examination, Dr. Liu focused on the actual exertional capabilities that plaintiff could present to him. As for those capabilities, Dr. Liu found that plaintiff had full or mostly full range of motion in his spine and in all extremities. (*Id.* at 577.) Dr. Liu combined those findings with other aspects of the examination to conclude, in his medical source statement, that plaintiff "has mild-to-moderate limitation for prolonged walking, bending, and kneeling." (*Id.* at 578.) The ALJ gave Dr. Liu's opinion only "some weight" because he explicitly acknowledged that the opinion "was based on a one-time examination of the claimant's condition." (Dkt. No. 5 at 35.) The ALJ thus anticipated plaintiff's objection and took it into account. *Cf. Wright v. Berryhill*, 687 F. App'x 45, 48 (2d Cir. 2017) (summary order) ("Dr. Wassef personally examined the Plaintiff and reached conclusions consistent with the objective medical evidence. Given these circumstances, the facts that Dr. Wassef's specialty is pediatrics and that his review did not include the Plaintiff's MRI results do not preclude the ALJ from assigning Dr. Wassef's opinion significant weight, especially in light of the other evidence in the record."). The ALJ balanced the consultative examination with an explicit discussion of numerous imaging studies including multiple radiology, CT, and MRI reports from 2014 and 2015. (Dkt. No. 5 at 33–34.) As the ALJ mentioned, the imaging studies certainly show degenerative changes, but the accompanying impressions from the physicians who conducted them contained no information that would be inconsistent with Dr. Liu's opinion of mild-to-moderate limitations. (*See, e.g.*, Dkt. No. 5-1 at 674, 912.) *Cf. Amos v. Comm'r*, No. 1:18-CV-1367 (WBC), 2020 WL 1493888, at

6

*4 (W.D.N.Y. Mar. 27, 2020) ("Although no medical source provided a specific opinion regarding

Plaintiff's functional limitations based on a review of the MRI, this does not mean the ALJ

impermissibly interpreted the findings in the MRI.  The ALJ acknowledged the findings of Plaintiff's

MRI as outlined on the report; however, the ALJ did not rely on his own lay interpretation of the

MRI to support his RFC determination.  Physicians, who did have access to the MRI, consistently

reported normal findings on examination and did not provide any functional limitations in their

reports.").  Treating physicians who examined plaintiff reviewed the imaging studies and

acknowledged plaintiff's pain, compression fractures, and neural compression while also noting that

plaintiff had a normal gait and full strength in his extremities.  (*E.g.*, Dkt. No. 5-1 at 916, 919, 933.)

Under these circumstances, substantial evidence supported the RFC of sedentary work.

      Plaintiff also challenges the ALJ's decision to craft an RFC that did not contain limitations

related to stress.  Plaintiff rests this challenge on a consultative psychiatric evaluation that he

underwent on December 23, 2014 with PhD psychologist Dr. Gregory Fabiano.  (Dkt. No. 5-1 at

569.)  Plaintiff argues that Dr. Fabiano made findings that the ALJ failed to take into account:

> Dr. Fabiano diagnosed Plaintiff with an adjustment disorder and opined that
> he had a mild limitation in dealing with stress appropriately.  T. 1665-68.  The ALJ
> found that the Plaintiff did not have a severe mental impairment.  T. 26-27.
> However, an ALJ must consider the effects of all of the Plaintiff's impairments,
> including the nonsevere ones.  *Parker-Grose v. Astrue*, 462 Fed. Appx. 16, 18 (2d Cir.
> 2012), citing 20 C.F.R. 404.1545(a)(2).  Failure to account for limitations imposed by
> Plaintiff's non-severe mental impairments requires remand.  *Rousey v. Comm'r of Social
> Security*, 285 F.Supp.3d 743, 742 (S.D.N.Y. 2018).  The ALJ then failed to weigh the
> opinion of Dr. Fabiano when considering the opinion evidence.  T. 31-32. As such, the
> ALJ failed to make "specific findings of fact" concerning stress.  *Booker*, 2015 WL
> 4603958 at 3-4.  At the hearing the vocational expert testified that a limitation to "low-
> stress" work would preclude past work, although there would be unskilled work the
> Plaintiff could perform.  T. 71.  However, even "low-stress" work might not properly
> account for a person with mental limitations.  *Booker*, 2015 WL 4603958 at 3-4.

(Dkt. No. 9-1 at 19–20.)  The Commissioner responds that the ALJ did not need to consider Dr.

Fabiano's evaluation at length because plaintiff's mental impairments did not qualify as severe.

Additionally, according to the Commissioner, the ALJ did review Dr. Fabiano's evaluation and gave

it appropriate consideration along with other information in the record:

> Here, the ALJ correctly determined that Plaintiff's mental impairments,
> considered singly and in combination, did not cause more than minimal limitations in
> Plaintiff's ability to perform basic mental work activities. T26. Specifically, the ALJ
> noted that Plaintiff was not receiving mental health treatment. T26-27, 1665. The
> ALJ noted that Plaintiff could follow instructions, socializing with others, shop
> independently, mange his finances, and maintain attention. T26-27. Mental status
> examinations consistently showed normal results. T1061, 1103, 1118, 1630, 1736-
> 1737; *see also* T564, 570, 911, 912, 916, 1191, 1197, 1570, 1637, 1798, 2025.

> Dr. Gregory Fabiano performed a consultative examination of Plaintiff,
> which reflected findings all within normal limits. T1666-1667. His demeanor and
> responsiveness to question was cooperative. T1666. His manner of relating, social
> skills, and overall presentation were adequate. T166. His speech was fluent and
> clear. T1667. His thought processes were coherent and goal directed. T1667. His
> affect was full and his mood was neutral. T1667. He was oriented to person, place
> and time. T1667. His attention, concentration and memory were intact. T1667.
> His insight and judgment were good. T1667. Not a single abnormal finding was
> noted. T1667. Dr. Fabiano assessed no more than a mild limitation in Plaintiff's
> ability to deal with stress, and concluded that Plaintiff's mental problems were not
> significant enough to interfere with the ability to function on a daily basis. T1668.
> This opinion provided strong support for the ALJ's step two determination that
> Plaintiff did not possess a severe mental impairment.

(Dkt. No. 10-1 at 9–10.)

The Commissioner has the better argument here as well. During his examination, Dr.

Fabiano found that plaintiff had good grooming; coherent and goal-directed thought; and a full

range of appropriate speech and thought content. (Dkt. No. 5-1 at 571.) Dr. Fabiano found further

that plaintiff had average intellectual functioning along with good insight and judgment. (*Id.*) Dr.

Fabiano concluded that plaintiff had a good ability to manage activities of daily living. (*Id.*)

Ultimately, while acknowledging that plaintiff had adjustment disorder with depression and was in

early remission for alcohol and cocaine substance abuse, Dr. Fabiano issued the following medical

source statement:

> The claimant does not appear to have any limitations in his ability to follow
> and understand simple directions and instructions, perform simple tasks
> independently, maintain attention and concentration, maintain a regular schedule,
> learn new tasks, perform complex tasks independently, make appropriate decisions,
> and relate adequately with others.  He appears to have some mild limitations in his
> ability to appropriately deal with stress.

(*Id.* at 572.)  *Cf. Rivera v. Berryhill*, 312 F. Supp. 3d 375, 379 (W.D.N.Y. 2018) (Commissioner

affirmed where, *inter alia*, "[t]here is no objective evidence in the record that plaintiff is more than

mildly impaired by stress, or cannot maintain a regular work schedule").  The ALJ cited Dr. Fabiano,

though not by name, when noting that plaintiff told Dr. Fabiano that he was receiving no outpatient

psychological or psychiatric treatment at the time of the examination.  (Dkt. No. 5 at 31.)  The

absence of treatment is consistent with clinical  or hospital notes in the record describing plaintiff's

psychiatric status with language such as, "Behavior and mood are pleasant, patient is cooperative and

appropriate for age.  Patient's affect is calm and rational.  Patient is oriented to person, place,

situation and time.  Patient's judgment and insight are appropriate.  Patient does not appear

delusional or appear to be hallucinating."  (*Id.* at 1065.)  *Cf. Underwood-Castang v. Colvin*, No. 15-CV-

5223 (WFK), 2017 WL 5515852, at *5 (E.D.N.Y. Mar. 28, 2017) (lack of mental health treatment

supported ALJ's finding of no severe mental impairment).  Under these circumstances, the Court

has to conclude, contrary to plaintiff's arguments, that the ALJ did weigh and cite to Dr. Fabiano's

evaluation.  The ALJ simply had no severe impairment before him that would meet a medical listing

or that would need inclusion in the RFC.

Overall, plaintiff at most has raised some minor factual discrepancies in the record and has

raised some disagreements with the ALJ about how to resolve those discrepancies.  Resolving

factual discrepancies within a certain range of opinions is where the substantial-evidence rule has

maximum effect.  "Even where the administrative record may also adequately support contrary

findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as

they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks and citation omitted); *see also Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("We examine evidence both supporting and detracting from the decision, and we cannot reverse the decision merely because there exists substantial evidence supporting a different outcome.") (citation omitted); *Henderson v. Comm'r*, No. 18-CV-00072, 2019 WL 3237343, at *5 (W.D.N.Y. July 18, 2019) (affirming ALJ resolution of RFC where treating physician records supported exertional limits despite other evidence in the record).  Under these circumstances, the Court is obligated to affirm the Commissioner's final determination regardless of how it might have viewed the evidence in the first instance.

## III.    CONCLUSION

The Commissioner's final determination was supported by substantial evidence.  For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 10) and denies plaintiff's cross-motion (Dkt. No. 9).

The Clerk of the Court is directed to close the case.

SO ORDERED.

___/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: April 20, 2020

10